United States Bankruptcy Court
Southern District of Texas

**ENTERED**

January 12, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 23-30161** |
| **MICHELE ANITA DIBASSIE,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |
| | § | |
| **CHRISTOPHER REEVES AND** | § | |
| **SCS REPAIR GROUP, LLC,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 23-3063** |
| | § | |
| **MICHELE ANITA DIBASSIE,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

This litigation involves two related adversary proceedings that were consolidated for trial: 23-3057 and 23-3063.  The first case, Case No. 23-3057, began as a state court lawsuit filed on April 6, 2022 (the "State Court Suit")[1] removed by the debtor, Michele Anita DiBassie ("Michele DiBassie" or "Debtor"), to this Court which involves parties over which the Court has jurisdiction by consent; i.e., Christopher Brian Reeves ("Reeves"), one of the plaintiffs, and a creditor of the Debtor, and Michelle DiBassie the debtor/defendant who removed this case to this Court and thereby consented to jurisdiction.  It also involves another plaintiff and defendants who have not consented to jurisdiction.[2]  The claims against these defendants are not core and these defendants may be entitled to a jury trial.  The Court intends to dispose of all claims between these two parties who consented to jurisdiction in the removed state court action.  As to the other parties; to wit, SCS Repair Group, LLC, Emilynn DiBassie and Structural Concrete System, LLC, the Court holds as to these parties and claims, that they are not core matters, that the claims and causes of actions are between non-debtor and/or non-creditor parties and the Court has no jurisdiction. It thereby

---

[1] Cause No. 2022-20981, *SCS Repair Group, LLC and Chris Reeves v. Emilynn DiBassie and Michele DiBassie*, In the 281st Judicial District Court, Harris County, Texas.

[2] The live pleading, the First Amended Complaint asserts that Plaintiffs consent to this Court's jurisdiction, but there was no evidence of a corporate resolution allowing SCS Repair Group, LLC, to bring the State Court Suit or remove the State Court Suit to this Court.

remands any unresolved claims or causes of action as between Reeves, SCS Repair Group, LLC, plaintiffs against Emilynn DiBassie and Structural Concrete System, LLC, defendants after this opinion to the 281st District Court of Harris County, Texas in Cause Number 2022-20981. The Court notes that Structural Concrete System, LLC was only added as a party in the First Amended Complaint filed in this adversary case.[3]

The second adversary, 23-3063 is a dischargeability complaint filed by SCS Repair Group, LLC and Christopher Reeves against Michele Anita DiBassie under 11 U.S..C § 523(a)(4) and (a)(6). This is core matter over which the Court has jurisdiction and for which Michele has no constitutional right to a jury trial. The plaintiffs filed a Second Amended Complaint on July 10, 2023[4] objecting to Michele DiBassie's discharge under 11 U.S.C. § 727(a)(4), as well as the previous allegations under 11 U.S.C. §§ 523(a)(4) and (a)(6). The Debtor received a discharge on September 12, 2023. There has been no request to revoke the discharge under 11 U.S.C. § 727(d).

Trial was held over two days on January 8, 2024, and January 9, 2024. The Court enters identical fact findings and conclusions of law in both cases. Any findings of fact are dicta or non-conclusory as to the remanded case or causes of action not disposed of by this opinion and are entered simply as an aid to the state court and other parties who may review this order.

SCS Repair Group, LLC is a limited liability company organized under the laws of the Commonwealth of Puerto Rico on March 4, 2021. While the terms of its organization and management are contested as described herein the date of formation is absolute. Reeves, a plaintiff in both adversaries claims to be a 50% owner of SCS Repair Group, LLC. Emilynn DiBassie, the daughter of Michelle DiBassie, claims to be the 75% owner of SCS Repair Group, LLC. Michelle DiBassie claims to have no ownership in SCS Repair Group, LLC but does claim to be the 100% owner of Structural Concrete Systems, LLC. Ownership of Structural Concrete Systems is not in dispute. For the reasons stated below the Court holds that SCS Repair Group, LLC is owned 50% by Reeves, 50% by Michelle Dibassie and that Emilynn Dibassie is merely a "straw man" for her mother.

The Limited Liability Company Agreement of SCS Repair Group, LLC (the "Agreement") that forms, and one would assume, controls the operation of SCS Repair Group, LLC is highly

---

[3] ECF No. 25
[4] ECF No. 31

disputed.  The Court has seen five versions of this Agreement, both signed, unsigned, signed with a forged [electronically placed] signature and with or without attachments.

The Court has in its possession a wet signature copy of the Agreement.[5]  Both Reeves and Emilyn DiBassie admitted they signed it.  Reeves did not remember if the signed document had any attachments, Emilyn DiBassie testified that it did not when she signed it and that discussions of ownership or shares were "ongoing."  Emilyn DiBassie signed the document first and her signature was notarized.  Reeves did not sign it at the same time, and it was not evident from the testimony when this occurred, only that he did sign it, which he admitted.  Two scanned copies of the wet signature Agreement are in the record at ECF No. 128-2 and ECF No. 130-2.  The Court holds that they are the document signed by Reeves and Emilyn DiBassie, that the Agreement does not contain any attachments which purport to control either a division of ownership or a requirement of capital contributions.  Given that there were no attachments, the Court holds that Reeves is a 50% owner of SCS Repair Group and that Emilyn DiBassie is the purported owner of the other 50%.  As described herein the Court holds that Michelle DiBassie is the true owner of Emilyn DiBassie's claimed 50%.

Additionally, in support of the Court's later described credibility holding as to Michelle DiBassie, the Court finds that ECF No. 128-1 contains a forged signature of Reeves and that Michelle DiBassie created that document by attaching a scanned signature to it and that she caused it to be filed in state court litigation.  Other copies which purport to show a division of ownership or capital contributions [that in any event were never made] are not signed, agreed to, nor were they ever executed.

The Court stresses in these findings the burden of proof.  The Court has applied a "preponderance of the evidence" standard, a/k/a a more likely than not standard.  The facts in this case are highly disputed, and the evidence entered was highly contradictory.  No named party was in the Court's opinion wholly truthful, and most of the witnesses the Court heard held a financial bias.  However as to the two DiBassie parties, Michele and Emilyn, the Court must hold that their testimony lacked both truth and veracity.  They simply were not credible.

As to Michelle DiBassie, the Court finds that she forged numerous documents by the placement of Reeves' electronic signature on documents without authorization, including on documents he had never seen.  The Court believes that as the person who controlled passwords on

---

[5] ECF No. 130-2 and 128-2, the Court by mail has returned the original document to counsel for DiBassie.

Reeves' SCS Repair Group, LLC's email and cloud account, she manipulated his email and access, ending when she without authority changed his email password. She has also engaged in long standing discovery abuses failing to produce documents, not timely producing documents and not complying with Court orders, which eventually led the Court to strike her pleadings. Michele DiBassie, except as to uncontested facts, had no credibility with the Court and the record. The Court is simply unable and unwilling to determine when her lies ended and the truth began. Simply stated Michele DiBassie's conduct in this case destroyed her credibility with the Court. The Court stresses that no party can lie to the Court in one breath and then claim in the next that they are truthful.

As to Emilyn DiBassie, the Court is more forgiving but still cannot believe her testimony. She is the daughter of Michele DiBassie, relatively young, and was a full-time college student in Galveston, Texas during 2021, the time period of the formation of SCS Repair Group, LLC, and the time period just before the large disputes giving rise to these adversaries. Furthermore, these disputes were totally between Reeves and Michelle DiBassie. Emilynn DiBassie's testimony was clearly intended to protect her mother. This Court also has a long memory, Emilynn testified at a hearing on the Trustee's Motion to Dismiss, or in the alternative, Motion to Convert to Chapter 7 in the main bankruptcy case on June 13, 2023. At that time, she claimed the Fifth Amendment on numerous occasions and testified she was not materially involved in SCS Repair Group, LLC. Any revisionist testimony at trial by Emilynn DiBassie cannot be believed.

Reeves had a long-standing working relationship with Michelle DiBassie and her ex-husband at Structural Concrete Systems, LLC. Both Structural Concrete Systems, LLC and SCS Repair Group, LLC are in the business of the rehabilitation of concrete. Reeves was an employee of Structural Concrete Systems, LLC but also testified that he shared in 10% of the profits as a bonus, which in part he claims remains unpaid and is one of the various claims that this Court remands to the State Court. Michele DiBassie and her ex-husband were actively involved in Structural Concrete Systems, LLC until they divorced, at which time Michele DiBassie was granted ownership of Structural Concrete Systems, LLC as part of the divorce proceeding. These events would directly lead to the formation of SCS Repair Group, LLC. Reeves had been a key employee of Structural Concrete Systems, LLC. Michele DiBassie was apparently worried he would leave because he could fill the role of job estimator that Michele DiBassie's ex-husband had previously held. Additionally, he had the knowledge and expertise to manage construction job

sites.  Michele DiBassie wanted Reeves to continue to work with her.  There was no indication that Michele DiBassie had the ability to manage job sites or estimate so his continued employment was an apparent necessity.

After the formation of SCS Repair Group, LLC in March of 2021, all was calm until early 2022.  Reeves estimated jobs and managed construction, including a large 2.8 million dollar job on the United States Custom House in Puerto Rico.  He estimated jobs and managed in the field. Michele DiBassie managed the office, books, billing, and other administrative tasks.  It is evident from the testimony that Reeves was the construction or field manager, and that Michele DiBassie was the office manager and that Reeves had limited or no knowledge of office affairs.

In 2022, the lid blew off operations.  Reeves believed he was owed 50% of the profits of SCS Repair Group, LLC and it was evident that Michelle DiBassie was not going to pay him this amount.  Things got nasty very quickly, threats were made, and litigation was commenced.

By Reeves' testimony the agreement was that Structural Concrete Systems, LLC would cease business and SCS Repair Group, LLC would begin operations.  The first job for the SCS Repair Group, LLC book was the large job at the United States Custom House.  By testimony of multiple parties, the contract had a 40% profit margin built in which was estimated as high as 1.5 million dollars, however the Court notes that the math at 40% profit on a 2.8-million-dollar project is only just over 1.1 million dollars.  Reeve's share would then be about $550,000.00.

On or about January 11, 2022, Reeves believed that the United States Custom House project was complete, and he wanted to be paid his 50% share of profits.  He was given information that led him to believe that an accounting was being performed, and he would be paid.  While a purported accounting did occur, he was not paid, and several subsequent events occurred.[6]

On January 31, 2022, Michele DiBassie emailed Reeves and advised he was not due money but had instead been overpaid.  Reeves was furious.  He was a signatory on the SCS Repair Group, LLC bank account and so he wrote himself a check for $24,950.00 on January 31, 2022.  He deposited these funds into his own personal account.  Then on February 1st or 2nd of 2022, Michele DiBassie, without authorization, removed Reeves' access to his company emails and company online accounts by changing his password.  On February 2, 2022, Reeves was removed as a signatory on the SCS Repair Group, LLC bank account.  Reeves would later attempt to write a second check to himself which the bank did not honor.  On February 3, 2022, Reeves created his

---

[6] Email chain (ECF No. 128-5)

own company Reeves Restoration conducting exactly the same type of business as SCS Repair Group, LLC and Structural Concrete Systems, LLC.

At this point the Court should note the almost total lack of involvement of Michele DiBassie's daughter, Emilynn DeBassie in this dispute.  She is the purported or as claimed by herself and Michele DiBassie, the 75% owner of SCS Repair Group, LLC.  The Court considers Emilynn DeBassie to be a "straw man," she is for all purposes a cover for the real owner of the proportional interest that Michele DiBassie owned in SCS Repair Group, LLC.  The Court does acknowledge however that Emilynn DeBassie did play a part in removing Reeves from the SCS Repair Group, LLC bank account on February 2, 2023, however, the documents she signed, in part, have material misrepresentations.[7]

Michele DiBassie had prior to the formation of SCS Repair Group, LLC been involved in a contested divorce proceeding and had unresolved debt issues which led to her bankruptcy filing. She had every reason to set up Emilynn DiBassie as a surrogate for herself.  At the time of her bankruptcy petition she did not have a bank account.  Her previous bank accounts had been garnished by a State Court receiver appointed against her on multiple occasions.  At the time of her bankruptcy filing, she was using her daughter's, Emilynn DiBassie's bank account as her own, depositing her funds into her daughter's account, and using it to pay her outstanding obligations. Using her daughter Emilynm DiBassie as a front for her interest in SCS Repair Group, LLC was just like her use of her daughter's bank account to avoid payment to her creditors.  Her actions in doing so were at least consistent.  Additionally, control of SCS Repair Group, LLC's books and records has always resided with Michele DiBassie and not Emilynn DiBassie. As stated during the period of time that Reeves was working at SCS Repair Group, LLC, in Puerto Rico, he was working in tandem with Michele DiBassie and not Emilynn DiBassie, who resided in Galveston County, and was attending full time college at Texas A&M University in Galveston, Texas.

Reeves raises numerous claims against Michele DiBassie in both the removed State Court litigation and the adversary complaint but basically, they are that he was a 50% owner of SCS Repair Group, LLC and he was entitled to 50% of the profits of SCS Repair Group, LLC after

---

[7] ECF No. 142-2, Emilynn Dibassie claims 100% ownership of Structural Concrete Systems, LLC on 2/2/2022.

completion of the large Custom House project, and that Michele DiBassie failed to pay these sums to him. He also raises very broad claims[8] that are not supported by the evidence.

The evidence supports the following holding by the Court. Reeves and Michele DiBassie entered into an agreement to form a company, partially in writing, partially oral and partially by conduct, that Reeves would be the job estimator and site manager, he would bid projects, manage them physically, be paid a salary, plus a percentage of profits, if any, and receive expense reimbursements. Michele DiBassie would manage the office, accounting, billing and run other non-physical administrative operations. Reeves as stated had limited or no knowledge of what occurred in the office or SCS Repair Groups, LLC's accounting.

The Court begins with the accounting to which Michele DiBassie pointed the Court in her testimony (ECF No. 128-5, page 2). For 2021, DiBassie claims that Reeves was paid a total of $225,424 consisting of $145,860 in Salary, a $40,000 bonus and $19,564 in truck, insurance, cell phone expenses and $20,000 for fuel and meals. That Reeves received these funds is uncontested. Importantly the accounting also supports the Court's holdings herein. Michele DiBassie's accounting for SCS Repair Group, LLC to Reeves includes the years from 2018 to 2021. SCS Repair Group, LLC did not exist until March 4, 2021, so years prior to March 4, 2021; i.e., the years she includes in the accounting of 2018, 2019 and 2020 were years of Reeves' employment with Structural Concrete Systems, LLC, a company wholly owned by Michele DiBassie, and not years of SCS Repair Group, LLC operations.

SCS Repair Group, LLC, was for Michele DiBassie just a new business that she used to entice Reeves to continue to work with her, just a continuation of the same type of work done in prior years by Structural Concrete Systems, LLC. In the accounting, Michele DiBassie impliedly admits that that SCS Repair Group, LLC, is but an extension of Structural Concrete Systems, LLC. Michele DiBassie continued to pay Reeves the same salary and expenses as he was paid as an employee of Structural Concrete Systems, LLC and she expected her accounting to carry over from Structural Concrete Systems, LLC to SCS Repair Group, LLC.

Michele DiBassie claims Reeves has been overpaid, but her calculation is dubious on its face as she totals bonus funds from Structural Concrete Systems, LLC for years 2018 to 2020

---

[8] The First Amended Complaint filed on June 29, 2023 at ECF No. 25, alleges various causes of action and each one also claims conspiracy; they are breach of fiduciary duty, fraud, and conversion. There are also breach of contract allegations against Michele DiBassie and Structural Concrete Systems, LLC, unjust enrichment, and a request for declaratory relief that the plaintiffs are not bound by the contract (even though they assert breach of contract).

against money owed on account of a new entity formed in March of 2021.  Her conclusion that Reeves has been overpaid is laughable.

Reeves conducted extensive discovery in this case regarding the books and records of SCS Repair Group, LLC.  Discovery, as the record will reflect, was not totally responded to by Michele DiBassie.  The Court holds that the discovery produced by Michele DiBassie was selective and incomplete.  This was intentional as she was continually attempting to avoid the truth.

An accountant, Craig Martin ("Martin") testified at trial regarding the books and records[9] of SCS Repair Group, LLC.  Martin was hired by Michele DiBassie, and prior to discovery and trial of these adversary cases, was unknown to Reeves.  Martin conducted an initial annual review of the QuickBooks records in 2022 for 2021 and a quarterly review thereafter.  He did not enter expenses into QuickBooks, this was handled by Amber Lundsford, a long-time employee of Structural Concrete Systems, LLC, who was under the direct supervision and control of Michele DiBassie.  Martin did enter all of the Journal Entries reflected in the admitted exhibits, most at the direction of Michele DiBassie.  Martin indicated that he spot-checked some invoices against bill payments, and importantly indicated that he reviewed some paper billing and invoices that Michele DiBassie did not produce to Reeves.  However, Martin's testimony was such that the Court concludes that the QuickBooks records are mostly accurate as to amounts paid and to whom they were paid.  The issue is whether the transactions were properly authorized and/or actually valid transactions for SCS Repair Group, LLC and not other parties like the DiBassies or Structural Concrete Systems, LLC.

The SCS Repair Group, LLC General Ledger showing sales is contained at ECF No. 128-11. Total Sales until June 30, 2022, totaled $3,606,885.32. This number ties to the January 2021 to December 2023 Profit and Loss Statement at ECF 128-12.  A complete General Ledger consisting of 325 pages is located at ECF No. 128-13 and a supplement to the General Ledger produced on December 27, 2023, is located at ECF 146-1.  Reeves makes the following complaints about the accounting provided to him in discovery, which again the court reiterates was incomplete and intentionally misleading.

---

[9] The only books and records produced by Michele DiBassie were QuickBooks entries.  Michele DiBassie did not produce any supporting documents such as bills or invoices, however, Reeves issued a subpoena on the SCS Repair Group, LLC bank account and received copies of bank statements and cancelled checks.

There are numerous transfers between Structural Concrete Systems, LLC and SCS Repair Group, Inc., which by Reeves' calculation totaled $731,295.97[10] more transferred from SCS Repair Group, LLC to Structural Concrete Systems, LLC.  Reeves has a 50% ownership interest in SCS Repair Group, LLC, Michele DiBassie owns 100% of Structural Concrete Systems, Inc.  He claims these transfers were not authorized, were unbalanced between the two LLCs and improper.  He claims one half of the payment overage belongs to him.  Based on calculations made by the Court, it agrees and renders a non-dischargeable judgment for Reeves against Michele DiBassie as later described.

Reeves also claims that certain payments made to lawyers were improper. They include $85,000.00 to Stuart Wilson, $7,316.37 to Lovein Ribman, and $12,000.00 to Garnder Employment Law.  As to the payments to Lovein Ribman and Garnder Employment Law, the Court holds that Reeves has failed in his burden.  These may or may not have been proper, but this is not the burden of proof required for Reeves to prevail.  The Court cannot reasonably conclude that these transfers were improper.  Reeves believes the transactions to be improper, but the Court heard no evidence that supports these allegations.  Stuart Wilson ("Wilson") testified at trial regarding his representation and payments.  His testimony was at times subject to scrutiny.  He undoubtedly was retained by Michele DiBassie and given Michele DiBassie's 50% ownership interest in SCS Repair Group, LLC, she had management authority to hire Wilson for SCS Repair Group, LLC as its counsel, irrespective of Reeves' lack of knowledge.[11]  However, the Court holds that he did not represent SCS Repair Group, LLC as he actually represented both Michele DiBassie and Emilyn DiBassie, individually both in State Court litigation and pending bankruptcy matters.  The Court will later calculate the payments to Wilson authorized by Michele DiBassie as part of a non-dischargeable judgment.

Reeves claims payments to Lourdes Negron of $100,962.11 were not proper.  The Court rejects these claims, in toto.  The testimony of witnesses, especially that of Alfonso Fernandez, Jr., a lawyer who represented SCS Repair Group, LLC in its formation, specifically and definitively repudiates these allegations.

---

[10] ECF No. 146-3.
[11] There was nothing to indicate that there was any written restrictions on the management of SCS Repair Group, LLC by either Reeves or Michele DiBassie.  The Court holds that they each had management authority and were able to use it for any legitimate business purpose.

Reeves also claims profits for a project known as SAHA.  There is a lack of evidence as to this project and its profits.  As to any profits from SAHA, the Court finds that Reeves has not met his burden.

Reeves summarizes the transfers between SCS Repair Group, LLC and Structural Concrete Systems, LLC in Exhibit 146-2.  By his calculation Structural Concrete Systems, LLC deposited $763,586.97 into the account of SCS Repair Group, LLC and SCS Repair Group, LLC deposited $1,459,882.94 into the account of Structural Concrete Systems, LLC.  Reeves asserts a net outflow from SCS Repair Group, LLC of $696,295.97[12] in which he claims a 50% interest.

Michele DiBassie produced a Profit and Loss Statement (ECF No. 128-12) for SCS Repair Group, LLC.  If one believes that Profit and Loss Statement SCS Repair Group, LLC was very unprofitable.  It reports an accounting loss of $789,264.17. The Court concludes that is materially false for the following reasons.

First, there is an expense item of PD SCS of $246,092.08, this is a General Journal entry to support some of the net outflow of funds noted above.  In oral testimony this sum was in theory to reimburse Structural Concrete Systems, LLC for payroll it paid on behalf of SCS Repair Group, LLC.  The Court holds that this expense is fictitious.  The Court notes first that almost 1.5 million dollars was transferred from SCS Repair Group, LLC to Structural Concrete Systems, Inc. and there is nothing in the record that indicates that SCS Repair Group, LLC could not, with those substantial funds, make its own payroll.  Second, given the discovery abuses of Michele DiBassie, the Court notes there was no documentary evidence to support this transaction.  Nothing other than a single General Journey entry (ECF No. 128-13, pg. 290).

Second, it contains unpaid Consulting Fees of $720,000.  These are by testimony consulting fees of $40,000.00 per month payable to Structural Concrete Systems, LLC.  There are twelve General Journal entries at $40,000.00 each and twelve at $20,000.00 each that support this amount.  Entered successively they are unsupported by testimony or documentary evidence.[13]  The Court holds they are a simply made-up expense entered by the accountant at the direction of Michele DiBassie.  Additionally, and to add insult to injury SCS Repair Group, LLC was charged

---

[12] The difference between $696.295.97 and $731,295.97 previously stated is an alleged missing deposit on which the Court heard no evidence.
[13] ECF No. 128-13, pages 106-107.

interest for not paying these made-up consulting fees at the exorbitant rate,[14] and also made-up rate, of 27% in 2021 and 11.5% thereafter. Again, there is no writing, no loans, agreements or any documents indicating that there was a consulting agreement or intercompany loan from Structural Concrete Systems, LLC to SCS Repair Group, LLP or that exorbitant interest could be charged. The Court finds the unpaid Consulting Fee and all of the interest expense of $311,378.42[15] (which was actually paid by SCS Repair Group, LLC to Structural Concrete Systems, LLC for the benefit of Michelle DiBassie) to be fraudulent.

Reversing the phantom expenses listed above in the Income Statement of PD SCS $246,092.08, Consulting Fees of $720,000, Interest of $311,378.42 and the $85,000.00 in legal fees to Stuart Wilson, SCS Repair Group, LLC's purported loss of $789,264.17 becomes a profit of $573,206.31. If one compares the Court's recalculated profit of $573,206.31 against the calculation of outflows from SCS Repair Group, LLC reported by Reeves of $696,295.97 one can see that these numbers are not that different.

The Court can only conclude from the evidence before it and the calculations stated herein that the claim of Reeves regarding the $696,295.97 in outflows is correct. It was never successfully rebutted by competent evidence. In addition, given that the discovery responses of Michele DiBassie were incomplete the Court makes certain negative inferences as to the documentary records before it. The records she did provide are covered in large falsehoods as indicated herein and additionally are incomplete. Can the Court conclude that $696,295.97 is the exact number stolen by Michele DiBassie and transferred to her wholly owned entity, Structural Concrete Systems, LLC, no it cannot. Can it reasonably conclude that Reeves has met his burden of proof as described herein and that his calculation is more likely than not, it certainly can.

Michele DiBassie raises three issues in order to offset these improper payments (ECF No. 130-12). Three checks written by Reeves to himself that were paid by SCS Repair Group, LLC. The first is check 3922 for $24,950 written on January 31, 2022 (ECF No. 128-13, pgs. 17 and 319, coded by accountant in General Ledger to suspense). The Court allows this check as an offset for Michele DiBassie. The second is check 3948 for $40,000 (ECF No. 128-13, pgs. 11 and 308

---

[14] The Prime Rate in 2021 was 3.5%, the Prime Rate in 2022 ranged from 3.25% to 6.25%, today's prime rate in 2024 is 8.5%.
[15] Interest was charged not only on the unpaid consulting fees but also the intercompany loans. Again, there is nothing to support any charging of interest to SCS Repair Group, LLC for any loan or nonpayment of made-up expenses.

coded by accountant in General Ledger as bonus to Reeves).  The Court does not allow this check as an offset given its coding.  The third is a check 3926 for $23,217.00 (ECF No. 128-13, pg. 107 coded by accountant in the General Ledger as a short-term loan to Reeves).  The Court allows this as an offset.

**LEGAL ANALYSIS**

11 U.S.C. § 523(a)(4) provides "(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—**(4)** for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  Larceny and embezzlement involve the fraudulent appropriation of property, differing only in timing. Larceny applies when a debtor unlawfully appropriates property at the outset, whereas embezzlement applies when a debtor unlawfully appropriates property after it has been entrusted to the debtor's care.[16] A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for use other than that for which it was entrusted, and the circumstances indicate fraud.[17]  Embezzlement consists of three essential elements as follows: (1) the debtor appropriated funds, (2) the appropriation was for the debtor's use or benefit, and (3) the debtor did the appropriation with fraudulent intent.

The Court holds that the transfers from SCS Repair Group, LLC to Structural Concrete Systems, LLC that exceeded the transfers from Structural Concrete Systems, LLC authorized by Michele DiBassie are embezzlement.

11 U.S.C. § 523(a)(6) provides "(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; Section 523(a)(6) requires a showing that the debtor intended to harm the plaintiff.[18] "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress

---

[16] *Wright v. Minardi* (*In re Minardi*), 536 B.R. 171, 190 (Bankr. E.D. Tex. 2015); *Rainey v. Davenport (In re Davenport),* 353 B.R. 150, 199 (Bankr. S.D. Tex. 2006).

[17] *In re Miller*, 156 F.3d at 603 (*quoting In re Sokol*, 170 B.R. 556, 560 (Bankr. S.D.N.Y. 1994). *see also Powers v. Caremark, Inc.* 261 Fed.Appx. 719 (5ᵗʰ Cir. 2008)(embezzlement, however, is not limited to situations in which one person is entrusted with the property of another.  It also applies where a person lawfully obtains property, but then fraudulently appropriates it to his or her own use). *Moore v. United States*, 160 U.S. 268, 16 SCT.294, 40 L.Ed. 422 (1895).

[18] *Kawaauhau v. Geiger*, 523 U.S. 57 (1998) (Debt arising from medical malpractice judgment, attributable to physician's negligent or reckless conduct, did not fall within willful and malicious injury exception to discharge).

meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury.' Or, Congress might have selected an additional word or words, *i.e.*, 'reckless' or 'negligent,' to modify 'injury.'"[19] The Court finds that Section 523(a)(6) is not applicable to the trial evidence for the reasons so stated.

The burden of proving a denial of discharge under Section 727(a)(4) lies with the party objecting to discharge and is by a preponderance of the evidence. To prevail on a claim under this subsection, an objecting plaintiff must prove that "(1) the debtor made a . . . statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case.[20] The denial of a discharge under Section 727(a)(4) is generally not to impose strict liability for the schedules or imposed where the false statements were simple or honest mistakes or inadvertence. Instead, the debtor must willfully make a false statement with an intent to defraud his creditors.[21]

The only evidence introduced at trial regarding a Section 727(a)(4) denial of discharge was the omission of the scheduling of bank accounts by the debtor on her bankruptcy schedules. As previously stated, the debtor used her daughter's bank account as her own. She therefore had no signatory authority on a bank account [as so the account could not be seized by a receiver] and her not listing an account in her schedules is open to interpretation. However, because she deposited her funds into her daughter's bank account, she did have at a minimum an equitable interest in that bank account for any funds that existed in it as of the day of the bankruptcy filing. Not listing her equitable interest in the bank account in her schedules would therefore be an error on her part. However, there was no testimony as to any bank balances or amounts deposited or withdrawn. As a result, the Court finds the omission not material and not grounds to deny a discharge.

Accordingly, the Court awards a non-dischargeable judgment to Christopher Brian Reeves ("Reeves") against Michele Anita DiBassie ("Michele DiBassie") with interest at the federal rate of 4.83% from the date of entry in the amount of $348,147,98,[22] less an offset of $24,083.50[23] for a total non-dischargeable judgment of $299,980.98 pursuant to 11 U.S.C. § 532(a)(4). This judgment is entered in Adversary Case 23-3063.

---

[19] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).
[20] *In re Duncan*, 562 F.3d 688 (5th Cir. 2009).
[21] *In re Roberts*, 611 B.R. 261 (Bankr. W.D. Tex. 2020).
[22] ½ of $696,295.97
[23] ½ of $48,167.00

Additionally, the Court remands any remaining causes of action and any unresolved claims or causes of action as between Reeves, SCS Repair Group, LLC, plaintiffs against Emilynn DiBassie and Structural Concrete System, LLC defendants after this opinion to the 281st District Court of Harris County, Texas in cause number 2022-20981. This judgment is entered in Adversary Case 23-3057.

**SO ORDERED.**

SIGNED 01/12/2024

_____
Jeffrey Norman
United States Bankruptcy Judge